IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| **VALQUIRIA VESTIM NETO**, as next of kin and surviving spouse of Carlos Daniel Reitz Mucarsel, **LUNA REITZ-NETO**, **DABIAN ELIAS REITZ-NETO**, and **ANNA POMAZUNOVA**, as mother of minor **KIRILL COLIN REITZ POMAZUNOV**, | ) ) ) ) ) ) ) ) | | |
| PLAINTIFFS, | ) ) | | |
| vs. | ) ) | No. _____ | |
| | ) | JURY DEMAND | |
| **KNOX COUNTY, TENNESSEE**, **ASHLEY PACK**, **DEANNA JONES**, **SANDRA FLAMINI**, and **UNKNOWN DEPUTIES**, | ) ) ) ) ) | | |
| DEFENDANTS. | ) | | |

**COMPLAINT**

Come the Plaintiffs, Valquiria Vestim Neto, as next of kin and surviving spouse of Carlos Daniel Reitz Mucarsel, Luna Reitz-Neto, Dabien Elias Reitz-Neto, and Anna Pomazunova, as mother of minor Kirill Colin Reitz Pomazunov, by and through undersigned counsel, and for their cause of action against the Defendants would respectfully show to the Court and Jury as follows:

**I. The Parties**

1.1     The Plaintiff, Valquiria Vestim Neto, is a resident of Sarasota, Florida, and the surviving spouse of Carlos Daniel Reitz Mucarsel.

1.2     The Plaintiffs, Luna Reitz-Neto and Dabian Elias Reitz-Neto, are residents of Sarasota, Florida, next of kin, and the daughter and son, respectively, of Carlos Daniel Reitz Mucarsel.

1.3     The Plaintiff, Anna Pomazunova, is the mother of minor Kirill Colin Reitz Pomazunov who is the next of kin and son of Carlos Daniel Reitz Mucarsel, is a resident of Arlington, Virginia.

1.4     The Defendant, Knox County, Tennessee, is a governmental entity located in Knox County, Tennessee, and at all times relevant to the Complaint was responsible for the customs, policies, procedures, and training of its employees as well as the wrongs committed by deputies, including jailers, pursuant to Tenn. Code Ann. § 8-8-302.

1.5     The Defendant, Ashley Pack, is, upon information and belief, a resident of Knox County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff and/or Jailer for Knox County, Tennessee.  Defendant Pack is being sued in her individual capacity for her failure to perform, neglect of, and deliberate indifference to her duties as a deputy with the Knox County Sheriff's Department.

1.6     The Defendant, Deanna Jones, is, upon information and belief, a resident of Knox County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a nurse and medical supervisor for Knox County, Tennessee.  Defendant Jones is being sued in her individual capacity for her failure to perform, neglect of, and deliberate indifference to her duties as a nurse with the Knox County Sheriff's Department.

1.7     The Defendant, Sandra Flamini, is, upon information and belief, a resident of Knox County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a nurse for Knox County, Tennessee.  Defendant Jones is being sued in her individual capacity for her failure to perform, neglect of, and deliberate indifference to her duties as a nurse with the Knox County Sheriff's Department.

1.8     The Defendants, Unknown Deputies, are, upon information and belief, deputy sheriffs, jailers, and/or employees of Defendant Knox County but their identities are unknown at the present time.  Plaintiff has attempted to identify these individuals and had requested the identities of these individuals from Defendant Knox County, but the information currently available to the Plaintiff is not sufficient to discover the identity of these individuals.  It is anticipated that these individuals will be identified during the discovery process in this case.

## II.  Jurisdiction

2.1     This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C. § 1983.  This court has jurisdiction over the State claims asserted in this action pursuant to 28 U.S.C. §1347 (Supplemental), as both the State claims and Federal claims form part of the same controversy as well as 28 U.S.C. § 1332 (Diversity), as the parties are citizens of different states and involve a controversy in excess of $75,000.00.

## III.  Venue

3.1     Venue of this action is proper pursuant to 28 U.S.C. 1391(b) in that the events giving rise to the action occurred in the Eastern District of Tennessee.

## IV. NATURE OF THE CASE

4.1     This action arises under the **Fourteenth** Amendment to the United States Constitution and under federal law, specifically, the Civil Rights Act of 1964 as (amended), 42 U.S.C. § 1983 *t seq*. for violations of the Constitutional Rights of the Carlos Daniel Reitz Mucarsel, for the deliberate indifference to Mr. Mucarsel's medical needs.  It also arises under Tennessee law for claims against Knox County pursuant to Tenn. Code Ann. § 8-8-301, et seq. and Tenn. Code Ann. § 29-20-201, et seq.

-3-

## V. FACTS

5.1 On or about March 13 and 14, 2025, Mr. Mucarsel was a pre-trial detainee in the custody of the Knox County Sheriff's Office.

5.2 On March 13, 2025, Mr. Mucarsel had been arrested in a hotel room where he had been staying and was severely intoxicated.

5.3 Mr. Mucarsel was taken to the University of Tennessee Medical Center ("UTMC") where his blood alcohol content ("BAC") was measured to be .338 which was at a critical level.

5.4 Mr. Mucarsel was an alcoholic and had been living in East Tennessee, where he had previously attended school, in an attempt to seek help for his alcoholism.

5.5 Although Mr. Mucarsel had previously been in an alcohol rehabilitation program, he was in a prolonged relapse on March 13, 2025, during which he had been binge drinking for approximately seven (7) days straight.

5.6 The medical providers at UTMC kept Mr. Mucarsel in the hospital for more than (5) hours during which time he was administered Zofran (for nausea), IV fluids (for hydration), and Benadryl (as a sedative), and observed while the alcohol was metabolized by his body.

5.7 After Mr. Mucarsel was sober enough, he was released from the hospital to be taken to the Knox County Jail.

5.8 UTMC provided discharge paperwork for Mr. Mucarsel which was given to the jail staff and showed that Mr. Mucarsel's BAC had been tested at the hospital and had been at the level of .338 and also showed the medications that he had been given while at the hospital.

5.9 Mr. Mucarsel's history with alcohol was well known to Knox County Jail personnel and staff as he had been taken into custody on several public intoxication charges in the past and had also been arrested less than a month earlier after being severely intoxicated.

-4-

5.10    Jail staff were also aware that Mr. Mucarsel was alcohol dependent and would suffer life-threatening alcohol withdrawal symptoms, including seizures as his blood alcohol levels decreased.

5.11    Mr. Mucarsel had previously had seizures and required alcohol withdrawal medication be administered by the jail in the past, including after the arrest less than a month earlier.

5.12    At approximately 10:30 p.m. on March 13, 2025, a code blue was called for Mr. Mucarsel due to Mr. Mucarsel exhibiting tremors in his right hand and forearm.

5.13    Mr. Mucarsel told Defendants Jones and Flamini and several Unknown Deputies that he was "having a seizure."

5.14    After having this seizure, Mr. Mucarsel was taken to medical and placed in a holding cell for observation.

5.15    At 12:27 a.m. on March 14, 2025, Defendant Pack entered intake information for Mr. Mucarsel which included information that he suffered from seizures and had been drinking alcohol.

5.16    At 1:15 a.m. on March 14, 2025, Defendant Jones claimed that she started Mr. Mucarsel on a Tranxene taper for his alcohol withdrawal.

5.17    Defendant Jones's claim that she started Mr. Mucarsel on a Tranxene taper was false.

5.18    Mr. Mucarsel was administered a dose of Librium, not Tranxene.

5.19    The dose of Librium administered to Mr. Mucarsel was not in a sufficient amount to be therapeutic for his alcohol withdrawal.

5.20    Despite knowing that Mr. Mucarsel was at risk of serious injury or death if his alcohol withdrawal was not treated properly, according to the medical records and autopsy report, Defendant Jones chose to disregard that risk and administered, or directed others to administer, an insufficient dose of Librium to Mr. Mucarsel.

-5-

5.21    At approximately 1:30 a.m. on March 14, 2025, Defendant Jones noted that Mr. Mucarsel had seizure disorder due to alcohol withdrawal.

5.22    Defendant Jones had also previously, on February 24, 2025, noted Mr. Mucarsel's seizure disorder related to alcohol withdrawal.

5.23    Each of the individual Defendants were aware that Mr. Mucarsel's alcohol withdrawal placed him at serious risk of death even with the administration of Librium and that he required close and frequent monitoring of his symptoms.

5.24    Despite Mr. Mucarsel being placed in an observation cell and each of the individual Defendants being acutely aware of the serious risk of death or serious bodily harm that Mr. Mucarsel faced from his alcohol withdrawal, each of the individual Defendants ignored these risks and failed to properly and timely monitor Mr. Mucarsel's condition as his withdrawal symptoms worsened.

5.25    The Tennessee Corrections Institute ("TCI") has also adopted Minimum Standards for Local Correctional Facilities which establish minimum standards which must be followed by jails, including Defendant Knox County's jail, and are codified under Chapter 1400-01 of the Rules of the Tennessee Corrections Institute.

5.26    In accordance with Chapter 1400-01-.13(8), Defendant Knox County was required to perform a receiving screening on Mr. Mucarsel upon his admission and document on a screening form which would include his prescribed medications and any serious illness as well as any condition which may pose a health safety threat to Mr. Mucarsel.

5.27    In accordance with Chapter 1400-01-.13(15), Defendant Knox County was required to have at least one person per shift trained in awareness of potential emergency situations; transferring detainees to appropriate health care providers; recognizing symptoms of illnesses most common to the jail; and giving of medications to detainees.

-6-

5.28    In accordance with Chapter 1400-01-.13(16), Defendant Knox County was required to conduct detoxification of detainees from alcohol under medical supervision pursuant to clinical protocols approved by the jail's health authority which includes specific criteria for transferring symptomatic detainees suffering from withdrawal to a hospital or detoxification center.

5.29    In accordance with Chapter 1400-01-.13(20), Defendant Knox County was required to ensure that medications would be prescribed by a physician or physician's designee at the time of use and have officers or qualified health care personnel verify the medication is taken as directed and recorded on a medication receipt system.

5.30    In accordance with Chapter 1400-01-.16(2), Defendant Knox County was required to ensure that detainees are personally observed by its employees on a frequent basis for detainees who have special medical needs and to log both the time and results of these observations.

5.31    Pursuant to correctional jail standards, Defendant Knox County was required to establish protocols to transfer detainees with severe withdrawal symptoms to an outside hospital or licensed medical detoxification center.

5.32    Based on the medical records and autopsy report, in addition to providing Mr. Mucarsel with an insufficient dose of Librium, Defendants Jones and Flamini administered, or directed others to administer, Benadryl and Phenobarbital to Mr. Mucarsel.

5.33    Both Benadryl and Phenobarbital depress the central nervous system, which poses a serious risk of death or serious bodily injury for persons who are already suffering from alcohol withdrawal as well as causing sedation of patients which only mask symptoms but provides no therapeutic benefit.

5.34    Defendants Jones and Flamini were aware of the serious risk of harm posed by administering Benadryl and/or Phenobarbital to a patient suffering from alcohol withdrawal.

-7-

5.35 Despite knowing that administering these medications to Mr. Mucarsel would increase his risk of death or serious bodily injury, based upon the medical records and autopsy report, Defendant Jones and Flamini chose to disregard this risk and administered, or directed others to administer, Benadryl and Phenobarbital to Mr. Mucarsel.

5.36 According to the records from the jail, at 6:40 a.m. on March 14, 2025, a code blue was called after Mr. Mucarsel was found unresponsive in the observation cell.

5.37 Although CPR and other resuscitative efforts were taken, Mr. Mucarsel was not revived.

5.38 Jail staff called EMS, who transported Mr. Mucarsel's body from the jail and delivered it to the Knox County Regional Forensic Center for examination and autopsy.

5.39 The medical examiner ordered a toxicology report which revealed that Mr. Mucarsel had been administered Librium and not Tranxene.

5.40 It was further noted by the medical examiner that the amount of Librium in Mr. Mucarsel's blood was not high enough to be therapeutic in treating alcohol withdrawal symptoms.

5.41 The toxicology report from the medical examiners office also demonstrated that Mr. Mucarsel had been given an unreasonably high dose of Benadryl as well as a dose of Phenobarbital.

5.42 The cause of Mr. Mucarsel's death was determined to be alcohol withdrawal.

5.43 While Mr. Mucarsel was in the custody of Defendant Knox County, his illness and need for medical attention as described above would have been obvious to any of the Defendants.

5.44 While Mr. Mucarsel was in the custody of Knox County, he repeatedly reported his alcohol withdrawal symptoms and requested medical help from the Defendants.

5.45 While Mr. Mucarsel was in the custody of Knox County, the Defendants were actually aware of his medical condition and that it was progressively worsening.

-8-

5.46    While Mr. Mucarsel was in the custody of Knox County, the Defendants were aware that failing to provide medical care to Mr. Mucarsel could result in serious injury, prolonged, unnecessary suffering, and death.

5.47    While Mr. Mucarsel was in the custody of Knox County, the Defendants disregarded the risk of harm to Mr. Mucarsel and failed to provide him with the medical help, including proper dosing of medications and transfer to a hospital or licensed medical detoxification center, that was required for treatment of his alcohol withdrawal.

5.48    Despite the Defendants' knowledge of Mr. Mucarsel's progressively deteriorating condition and immediate need for medical attention, the Defendants failed to give him sufficient medication for his alcohol withdrawal symptoms, deliberately ignoring his obviously need for medical help and requests for medical care, and failing to properly document his medical condition, the medications actually administered to him, and need for medical help.

5.49    Despite the Defendants' knowledge of Mr. Mucarsel's progressively deteriorating condition and immediate need for medical attention, the Defendants failed to transfer him to a hospital or licensed medical detoxification center to treat his life-threatening alcohol withdrawal symptoms.

5.50    Detainees, including Mr. Mucarsel, are not free to leave detention and seek their own medical care and, therefore, have a right to receive medical care from jail staff to prevent serious harm and death caused by the lack of such care.

5.51    Defendant Knox County was obligated to provide detainees, including Mr. Mucarsel, with medical care to prevent serious harm or death in situations where the lack of such care would result in serious injury, death, or prolonged, unnecessary suffering.

-9-

5.52    Defendant Knox County was responsible for establishing policies and procedures for its employees, including the individual Defendants, to follow for providing medical care to detainees who needed such care to prevent serious injury, death, or prolonged, unnecessary suffering.

5.53    Defendant Knox County was responsible for providing adequate training to jail employees, including the individual Defendants, to identify detainees who may have medical conditions which are serious or severe enough that immediate medical attention would be required to prevent harm to the detainee.

5.54    It is obvious that inadequate or the complete lack of policies and procedures for providing necessary medical care to detainees would lead to the deprivation of the right of detainees to medical care for serious medical conditions.

5.55    It is obvious that inadequate or the complete lack of training for employees to recognize serious medical necessities would lead to the deprivation of the right of detainees to medical care for serious medical conditions.

5.56    Defendant Knox County promoted a policy, custom, or practice that encouraged its employees to provide inadequate medications and medical care to avoid the cost associated with providing proper medical care, to incorrectly claim in records that the proper medications and medical care were given, and to fail to record medications and medical care which were given.

5.57    Defendant Knox County's failure to properly train, discipline, and supervise the individual Defendants related to providing necessary medical care to detainees and encouraging the individual Defendants to record incorrect information was deliberately indifferent to the rights of individuals in the custody of the Knox County Jail, including Mr. Mucarsel.

5.58    Defendant Knox County's failure to properly train, discipline, and supervise the individual Defendants and encouraging the individual Defendants to record incorrect information

about detainee medical care was the moving force behind the individual Defendants' deliberate indifference to Mr. Mucarsel's serious medical needs.

5.59    Defendant Knox County's failure to provide proper policies and procedures to the individual Defendants related to the medical needs of detainees was the moving force behind the individual Defendants' deliberate indifference to Mr. Mucarsel's serious medical needs.

5.60    The conduct of the Defendants in ignoring Mr. Mucarsel's obvious need for medical help was outrageous, shocks the conscience, and is not tolerated in a civilized society.

5.61    The conduct of the Defendants in ignoring Mr. Mucarsel's obvious need for medical care was intentional, malicious, reckless, and demonstrates deliberate indifference to Mr. Mucarsel's constitutional right to necessary medical care while a detainee.

5.62    In doing the acts alleged in this complaint, the Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of Defendant Knox County and the State of Tennessee and under the authority of their office as employees, medical staff, and/or correction officers of Defendant Knox County.

5.63    As a result of the Defendants' deliberate indifference to Mr. Mucarsel's medical needs, he was forced to endure pain and suffering, both physical and emotional/mental as well as the loss of his life.

5.64    The actions of the Defendants in failing to provide the proper medical care for his alcohol withdrawal as described above was the cause of Mr. Mucarsel's death.

5.65    Additionally, after Mr. Mucarsel's arrest, his family, including Plaintiffs Valquiria Vestim Neto and Luna Reitz-Neto, contacted the Knox County Jail and the UTMC to inquire into Mr. Mucarsel's whereabouts and were only told that he had been "released on bail."

5.66    Following Mr. Mucarsel's death and the medical examination and autopsy of Mr. Mucarsel's body, instead of contacting Mr. Mucarsel's family and releasing his body to a funeral home of the family's choice, employees and/or agents of Defendant Knox County donated Mr. Mucarsel's body to "Cumberland Forest" where the body was placed in the "Body Farm" and left open to the elements.

5.67    The employees and/or agents of Defendant Knox County had the medical records for Mr. Mucarsel which listed Mr. Mucarsel's daughter, Plaintiff Luna Reitz-Neto, as his emergency contact and could have contacted her any time to inquire about the disposition of Mr. Mucarsel's body.

5.68    Plaintiff Luna Reitz-Neto was eventually notified of her father's death on April 28, 2025, and was told that his body had been donated to the "Body Farm" where it remained exposed to nature for approximately one (1) week.

5.69    Although the family would have wanted to have a traditional funeral ceremony for Mr. Mucarsel, because of his body being placed in the "Body Farm" the family was unable to have a traditional funeral for their loved one.

5.70    The mishandling of Mr. Mucarsel's body by the employees and/or agents of Defendant Knox County constitutes outrageous conduct and caused Mr. Mucarsel's family, including the Plaintiffs, severe emotional distress.

### COUNT I
### (VIOLATION OF FOURTEENTH AMENDMENT - CIVIL RIGHTS)

6.1    The Defendants, under color of law, deprived Mr. Mucarsel of rights secured by the Fourteenth Amendment to the United States Constitution, including his right to have his serious medical needs treated without deliberate indifference.

6.2     The Defendants, collectively and individually, were deliberately indifferent to Mr. Mucarsel's medical needs as he was suffering from alcohol withdrawal, a serious condition known to the Defendants which could, and ultimately did, result in his death.

6.3     The Defendants, collectively and individually, had actual knowledge of Mr. Mucarsel's physical condition including that he was alcohol dependent, had been drinking heavily for approximately a week, had a BAC at a critical level, that he suffered from seizure disorder related to alcohol withdrawal, that he had previously suffered seizures related to alcohol withdrawal, and that without treatment he could die from alcohol withdrawal.

6.4     The Defendants, collectively and individually, observed that Mr. Mucarsel's condition was progressively and increasingly worsening which would have indicated to any reasonable person that immediate medical attention, including transfer to an outside medical facility, was necessary.

6.5     The Defendants consciously disregarded the risk to Mr. Mucarsel that, as his condition worsened, he was at risk of death or serious injury.

6.6     The Defendants' denial of any meaningful medical treatment constitutes deliberate indifference to a serious medical need.

6.7     Pursuant to statute, the Defendants are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT II
### (MUNICIPAL LIABILITY - VIOLATION OF 42 U.S.C.A. § 1983)

7.1     The conduct of Defendant Knox County described above deprived Mr. Mucarsel of his right to necessary medical care as guaranteed under the Fourteenth Amendment to the United States Constitution.

7.2     As described above, Defendant Knox County was deliberately indifferent to Mr. Mucarsel's serious medical needs by failing to provide its employees with adequate training, supervision, policies, and procedures that would have provided the medical care that Mr. Mucarsel needed to avoid prolonged pain and suffering and death as well actively encouraging their staff to administer insufficient and improper medications for Mr. Mucarsel in an effort to avoid the cost and expense of providing necessary medical treatment to Mr. Mucarsel.

7.3     Pursuant to statute, Defendant Knox County is liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, and reasonable attorney's fees and costs.

## COUNT III
### (STATE LAW VICARIOUS LIABILITY - TENN. CODE ANN. §8-8-301, *ET SEQ.*)

8.1     Pursuant to Tenn. Code Ann. § 8-8-301, et seq., Defendant Knox County is also liable to the Plaintiff for the wrongs, injuries, losses, damages and expenses described above resulting from the actions of the individual Defendants who were deputies and/or jailers appointed by the Knox County Sheriff and, at the time of the incident described in this complaint, were acting by virtue of or under color of that office.

-14-

## COUNT IV
### (STATE LAW - GOVERNMENTAL TORT LIABILITY ACT
### NEGLIGENT INTERFERENCE WITH MR. MUCARSEL'S BODY AND
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

9.1 Defendant Knox County owed a duty of care to Plaintiff Valquiria Vestim Neto not to mistreat or improperly deal with the body of her husband, Mr. Mucarsel, and not to prevent the proper burial of Mr. Mucarsel's body and owed a duty of care to Mr. Mucarsel's family, including the Plaintiffs, not to mishandle his body in such a way as to cause severe emotional distress to his family.

9.2 Defendant Knox County, through its agents and/or employees, breached the above-listed duties to the Plaintiffs, in the following ways:

a. It failed to timely contact Mr. Mucarsel's family and notify them of his death;

b. It failed to obtain consent before donating Mr. Mucarsel's body to the Cumberland Forest "Body Farm;" and

c. It failed to prevent Mr. Mucarsel's body from being exposed to the elements preventing a proper burial of Mr. Mucarsel's body pursuant to the wishes of his family.

9.3 The breach by the Defendant, through its employees and/or agents, was the cause in fact and proximate cause of the damages and injuries suffered by the Plaintiffs.

9.4 As a direct and proximate result of the negligence of the Defendant, the Plaintiffs suffered severe emotional distress more fully described later in this complaint.

9.5 The negligence of the Defendant was committed by the Defendant's employees acting within the scope of their employment.

9.6 The Defendant's governmental immunity, therefore, is removed pursuant to Tenn. Code Ann. §§ 29-20-205.

## DAMAGES

10.1    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Mucarsel experienced emotional and physical pain and suffering, mental anguish, and ultimately died as a result of the lack of medical care.

10.2    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Mucarsel's medical condition effectively went untreated until he died.

10.3    As a direct and proximate result of the improper conduct of the Defendants as described above, Mr. Mucarsel suffered a loss of the pecuniary value of his life as well as the loss of his life and future enjoyment of life.

10.4    As a direct and proximate result of the improper conduct of the Defendants as described above, the Plaintiffs also suffered severe emotional distress from the negligent handling of Mr. Mucarsel's body.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully demand judgment against the Defendants jointly and severally as follows:

1.    That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2.    That Plaintiffs be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law;

3.    That the Plaintiffs be awarded a judgment for punitive damages against the individual Defendants in an amount that is necessary to punish the individual Defendants and to deter others from committing similar wrongs in the future;

4.    That the Plaintiffs be awarded their costs, litigation costs, discretionary costs, pre- and post judgment interest, and attorney's fees pursuant to 42 U.S.C. §1988; and

-16-

5.	That Plaintiffs be granted such other, further, and general relief as to which they are entitled.

Respectfully Submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

BY:___/s/ *James Bryan Moseley*_____
	James Bryan Moseley, No. 021236
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
Phone: (615) 254-0140
Fax: (615) 634-5090
bryan.moseley@moseleylawfirm.com


Law Office Of Leanne Austin Thorne

___/s/ Leanne A. Thorne (w/perm. JBM)_____
Leanne A. Thorne, No. 023481
P. O. Box 262
Lexington, TN 38351
Phone: (731) 968-9810
thornelaw@hotmail.com

*Attorneys for Plaintiffs*

-17-